## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>SOUTHERN DIVISION</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:17-CR-00533-KOB-TMP** |
| | ) | |
| **DOUGLAS GLOVER** | ) | |

## PLEA AGREEMENT

The Government and defendant, **DOUGLAS GLOVER,** hereby acknowledge the following plea agreement in this case:

## <u>PLEA</u>

The defendant agrees to (i) plead guilty to **COUNT THREE** of the Indictment filed in the above numbered and captioned matter, and (ii) consent to an order of forfeiture as described below. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to dismiss **COUNTS ONE AND TWO** of the Indictment at the time of sentencing and to recommend the disposition specified below, subject to the conditions in paragraphs V and VIII.

1

Defendant's Initials $\underline{\text{DG}}$

## TERMS OF THE AGREEMENT

### I. MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for the crime of Smuggling, in violation of Title 18, United States Code, Section 554, as charged in COUNT THREE is:

      a.    Imprisonment for not more than 10 years;

      b.    A fine of not more than $250,000, or;

      c.    Both (a and b);

      d.    Supervised release of not more than 3 years; and

      e.    Special Assessment Fee of $100.

_____
**DOUGLAS GLOVER**

### II. FACTUAL BASIS FOR PLEA

**The Government is prepared to prove, at a minimum, the following facts at the trial of this case:**

On or about December 7 or 8, 2016, the United States Postal Inspection Service (USPIS) was alerted to a package being held at the Center Point Post Office in Birmingham, AL. The Post Office received information that this package

2

Defendant's Initials DG

contained an iPad that was purchased using stolen identifying information. The package was being shipped to an address located at XXX E. Haven Dr., Birmingham, AL.

On or about December 9, 2016, Postal Inspectors went to XXX E. Haven Dr., and interviewed defendant Douglas Glover (hereinafter "GLOVER"). When questioned about why he was receiving packages addressed to another person's name, GLOVER stated that he had applied for, and accepted, a position with a company he saw advertised on Monster.com GLOVER stated he answered an ad online in which he would receive packages and then ship them back out according to instructions from the company. GLOVER provided USPIS with an email address for the company that he claimed he worked for and indicated that he communicated with this company via email.

At this point in the investigation, USPIS believed that GLOVER may have been an unknowing participant in a "re-shipping scheme". In such schemes, illegitimate businesses engage in various criminal conduct to move fraudulently purchased merchandise from the United States to foreign countries. These illegitimate businesses complete this scheme by putting out advertisements to hire people to work from home and to receive packages from various couriers. The companies then instruct the "employees" to repackage or re-label and ship the

3

parcels out to various addresses, often overseas. The illegitimate businesses will often pay these "employees" for the acceptance, repackaging, and reshipment of these parcels.

Postal Inspectors advised GLOVER that the package addressed to his residence was purchased through fraudulently obtained credit card information. USPIS informed GLOVER that if he continued to receive and re-ship packages from this company, he would be participating in criminal conduct which would subject him to possible criminal sanctions. GLOVER read and signed a Voluntary Discontinuance Agreement in which he agreed to stop reshipping packages that he received from the company.

GLOVER used a Yahoo! email account, thahub2@yahoo.com, to communicate with USPIS between December 9, 2016 and December 15, 2016. On December 9, 2016, the day the Postal Inspectors interviewed the defendant, GLOVER sent USPIS an email which stated, in sum and substance, "This is Douglas, we spoke earlier. In concerns to the issue, I have contacted the person and informed them that would not be able to work for them anymore." In that same email, GLOVER stated that he had one package in transit to him (and provided the tracking number) and four packages currently in his possession, as well as shipping labels. GLOVER provided a copy (by way of email attachments) of the shipping receipts. The shipping receipts

4

showed where GLOVER had previously mailed out packages via the U.S. Postal Service and UPS. Glover also requested USPIS respond to his email to set up a time and place to transfer possession of the packages from himself to the Government. USPIS told Glover that Wednesday, December 14, 2016 was the best time to meet but did not respond to Glover's email informing USPIS that he was free all day.

On December 14, 2016, USPIS still had not responded to GLOVER's last email from December 9, 2016, and did not attempt to communicate with him throughout the day. GLOVER did communicate with "the company" who informed GLOVER that the emails from USPIS agents were possibly fake email messages and that the people who sent the message were "fraudsters" who were trying to steal the packages he had been assigned to reship. The company told GLOVER that they had not had any contact with USPIS agents.

On December 15, 2016, USPIS emailed GLOVER, apologizing for not getting in touch with him on the agreed upon date. USPIS informed GLOVER that USPIS would not be able to pick up the packages. USPIS directed GLOVER to take the packages to the Center Point post office and return to sender the four packages that he stated were in his possession. GLOVER was also instructed by USPIS to refuse any additional packages that were mailed to him as part of the scheme. On December 15, 2016 GLOVER emailed the Postal Inspector and stated that he had spoken with

5

"the company," who told him the report made by the Postal Inspectors was false, the company had no record of the tracking number or person USPIS had informed him about at the December 9th meeting, and therefore the agreement he had signed meant nothing. GLOVER, in his final email to the Postal Inspector, stated that he could not just do what the Postal Inspector said since he felt it was a conflict of interest. GLOVER told USPIS they needed to get in contact with his supervisor at "the company."

After GLOVER was informed by Postal Inspectors that he was likely involved in a fraud scheme, and after he signed the Voluntary Discontinuance Agreement, GLOVER shipped out three additional packages on December 16, 2016, and a fourth package on December 19, 2016.

Two packages were taken into the Center Point Post Office in Birmingham, AL, and mailed out by GLOVER on December 16, 2016. The tracking numbers for those packages were: CJ455106262US and CJ455106355US. Video surveillance at the Center Point Post Office was retrieved and it shows GLOVER and an unidentified white male carrying the two large boxes that bore those tracking numbers into the Post Office. Both packages were addressed to locations in Russia. Both packages had counterfeit postage, but this was not discovered until after the packages were accepted at the Center Point Post Office's retail counter. Both

6

packages listed GLOVER and his address as the sender. Both packages had counterfeit postage attached that included false customs declaration forms. The customs forms described the contents of CJ455106262US and CJ455106355US as "Toy Parts."

On December 16, 2016, a package was dropped off at the Center Point Post Office that had tracking number EC201033650US. This package was addressed to a recipient in Russia and showed GLOVER and his address as the sender. This package had a label similar to the other packages and listed the contents as "autoparts." The label asserted that the postage was paid online through Stamps.com.

On December 19, 2016, a fourth package with tracking number EC201123871US was mailed from the Center Point Post Office. The package was addressed to a location in Russia and listed GLOVER and his address as the sender. The customs declaration on the package stated "Gift."

After the four packages were placed in the mail at the Center Point Post Office on December 16, 2016 and December 19, 2016, they were shipped by Center Point Post Office personnel to USPIS for review for suspected counterfeit postage. On December 20, 2016, when a Postal Inspector received the first two boxes and the boxes were being moved by the Inspector so that additional investigative steps could be taken, the tape on the bottom of one of the boxes gave way, and what appeared

7

Defendant's Initials $\underline{D G}$

to be an AK-47 (30-round capacity without ammo) magazine fell from the bottom of the box. The Postal Agent examined the packages (with these tracking numbers: CJ455106262US, CJ455106355US, and EC201033650US) on December 21, 2016. Because the tape that was used to seal the first package had detached from the box, the Postal Agent could see inside the box and was able to observe that it appeared to be full of AK-47 magazines without ammo. Each magazine appeared to be packaged in its original plastic wrapping from the factory and contained a warning which reads, in sum and substance, "This item is subject to the Arms Control Export Act. A prior authorization or license from the U.S. Department of State Department Directorate of Defense Trade Controls is required to export, re-export, transfer or re-transfer this item abroad."

Magazines for AK-47s are considered defense articles and appear on the United States Munitions List ("USML"). *See* 22 U.S.C. § 2278(a)(1); 22 C.F.R. § 120.2; 22 C.F.R. § 121.1. As such, anyone attempting to export these items are required to obtain a valid license from the Department of State, Directorate of Defense Trade Control ("DDTC"). *See* 22 U.S.C. § 2778(b)(2); 22 C.F.R. § 123(a).

The remaining boxes described above were transported to a Homeland Security Investigations office and opened pursuant to border search authority. The first two boxes contained multiple 30-round capacity AK magazines. Each

8

Defendant's Initials DG

magazine was packaged in its original plastic wrapping, which was labeled with the detailed warning described above. The remaining box contained automobile parts. While the contents of this box are not subject to the Arms Control Export Act, this box contained a packing slip which indicates that these auto parts were previously shipped to another individual using GLOVER's address.

The fourth package (to-wit, EC201123871US), which was mailed from the Center Point Post Office to the Birmingham Domicile of USPIS, was examined by a Postal Agent on December 22, 2016. The Postal Agent noted that the package was sent by GLOVER and to an address in Russia. The Postal Agent contacted HSI and arranged to transport the package to the HSI office to be subjected to a border search. A search of the fourth package revealed 21-round, high capacity magazines designed for Glock handguns. The magazines appeared to be in their original packaging and had a similar warning regarding exports as is detailed above.

Postal Agents determined that the magazines had been ordered from a company called Cheaper Than Dirt. The Cheaper Than Dirt invoice is dated December 6, 2016, and indicates that the magazines were sold and shipped to GLOVER. The shipment would have been split into two boxes. A Cheaper Than Dirt employee informed USPIS that approximately 50 magazines would have been placed inside one box, with the remaining 60 inside the second box. This employee

9

informed USPIS that the shipping invoice and catalog-style inserts would have been placed inside one of these two boxes. Notably, when USPIS took custody of these boxes, there were no shipping invoices or other documents inside.

On July 25, 2017, USPIS interviewed GLOVER at this home. GLOVER acknowledged being visited by USPIS in December of 2016 and signing the Voluntary Discontinuance Form. He admitted that when USPIS first came to his home, the four packages at issue were inside his residence. GLOVER was shown copies of the shipping labels and acknowledged that the packages were destined for Russia and that the labels contained information regarding their purported contents. GLOVER stated that the labels and custom forms attached to the packages were sent to him by "the company." After initially denying knowing what was inside the boxes, GLOVER later admitted that when they arrived, one of the boxes was open and needed to be retaped. GLOVER stated that he took the catalogues out of the box and threw them away. He also stated that he saw that the box contained magazines, and that each one was individually wrapped. GLOVER was shown a picture of the magazines, which showed the ITAR warning label and GLOVER acknowledged seeing the warning.

On February 15, 2017, HSI Special Agent Joe Skidmore informed the Postal Agent that a search of State Department records showed negative results for

10

GLOVER ever having been issued a license or registration with the State Department to export munitions from the United States. Further, a Memorandum from the U.S. Department of State's Bureau of Political-Military Affairs Office of Defense Trade Controls Compliance, dated March 16, 2017, confirmed that GLOVER has never been licensed to lawfully export munitions from the United States.

The parties stipulate that the Guideline imprisonment range is between 10 and 16 months.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

**DOUGLAS GLOVER**

## III. <u>RECOMMENDED SENTENCE</u>

Subject to the limitations in paragraph VIII regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the Government, will recommend the

Defendant's Initials DG

following disposition:

    (a)    That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

    (b)    That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term of **no more than 16 months**. The Government acknowledges that the defendant is entitled to credit towards any custodial sentence for the time served in BOP custody prior to sentencing;

    (c)    That following the term of imprisonment imposed by the court, the defendant be placed on supervised release for a period to be determined by the court, subject to the standard conditions of supervised release as set forth in U.S.S.G § 5D1.3;

    (d)    That the defendant be required to pay a fine in accordance with the sentencing guidelines, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid, in accordance with his ability to pay, in full by the expiration of the term of supervised release;

    (e)    That the defendant agrees to the entry of an order of forfeiture pursuant to the Notice of Forfeiture; and

Defendant's Initials D͟G͟

(f)    That the defendant pay a special assessment fee of $100.00 said amount due and owing as of the date sentence is pronounced.

## IV.   WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, **DOUGLAS GLOVER**, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

The defendant reserves the right to contest in an appeal or post-conviction proceeding the following:

(a)    Any sentence imposed in excess of the applicable statutory maximum sentence(s);

13

(b)    Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and

(c)    Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, DOUGLAS GLOVER, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.


_____
DOUGLAS GLOVER

Defendant's Initials DG

## V. UNITED STATES SENTENCING GUIDELINES

Defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in <u>United States v. Booker</u>, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII. VOIDING OF AGREEMENT

The defendant understands that should the defendant move the Court to accept the defendant's plea of guilty in accordance with, or pursuant to, the provisions of <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), or tender a plea of *nolo contendere* to

15

Defendant's Initials DG

the charges, this agreement will become NULL and VOID. In that event, the Government will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.

## VIII.  SUBSEQUENT CONDUCT

**The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in paragraph III of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in his sole discretion.**

## IX.  OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## X.  COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in which the defendant has any interest or over which the defendant exercises control,

16

directly or indirectly, including those held by a spouse, nominee or other third party. The defendant also will promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs. The defendant also agrees that the defendant's financial statement and disclosures will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## XI. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct. Additionally, if this agreement contains any

Defendant's Initials ⟋⟍⟍

provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

## XII. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that he plea may entail, even if the consequence is his automatic removal from the United States.

18

## XIII.  FORFEITURE

The defendant agrees to identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest. The defendant agrees to take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant. The defendant agrees to undergo any polygraph examination the government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant agrees to consent to the immediate entry of a final order of forfeiture against him, pursuant to Fed. R. Crim. P. 32.2(b)(l), as a result of the offense alleged in Indictment Count Three and to which the defendant is indicating his desire to plead guilty by way of this written Plea Agreement. For purposes of entering said order of forfeiture, the defendant acknowledges that a nexus exists between the forfeited property and the criminal offense(s) to which the defendant is pleading guilty. The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding.

The defendant acknowledges that if, due to an act or omission of the

19

defendant, proceeds of the defendant's offense(s): (i) cannot be located upon the exercise of due diligence; (ii) have been transferred or sold to, or deposited with, a third party; (iii) have been placed beyond the jurisdiction of the court; (iv) have been substantially diminished in value; or (v) have been commingled with other property which cannot be divided without difficulty, as a result, the Government is authorized under law to seek the forfeiture of any and all assets of the defendant as substitute assets for the purpose of satisfying the final order of forfeiture until same is satisfied in full.

The defendant hereby waives the requirements of Federal Rules of Criminal Procedure 32.2 regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Federal Rules of Criminal Procedure 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this Plea Agreement. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture

20

carried out in accordance with this Plea Agreement on any grounds, including any Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Information and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

## Non-Abatement of Criminal Forfeiture

The defendant agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

21

Defendant's Initials DG

## XIV.  DEFENDANT'S UNDERSTANDING

I have read and understand the provisions of this agreement consisting of twenty four pages.  I have discussed the case and my constitutional and other rights with my lawyer.  I am satisfied with my lawyer's representation in this case.  I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence.  I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

_____N/A_____
(if none, write N/A)

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

22

Defendant's Initials DG

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

_8-24-2018_
DATE

**DOUGLAS GLOVER**
**Defendant**

## XV. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea on the terms and conditions set forth herein.

_9/24/18_
DATE

**ALLISON CASE, ESQ**
**Defendant's Counsel**

23

Defendant's Initials DG

## XVI. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this Agreement and concur that the plea and

disposition set forth herein are appropriate and are in the interests of justice.


**JAY E. TOWN**
**United States Attorney**


August 28, 2018
_____
DATE

Roki B. Mark
_____

**ROBIN B. MARK**
**Assistant United States Attorney**

Revised November 2009

Defendant's Initials DG